

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| BENNY F. FINK, | ) |
| | ) Civil Action No. 5:08CV00007 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Benny F. Fink, was born on September 11, 1964 and eventually reached the ninth grade in school. Mr. Fink has worked as a maintenance man in the poultry industry and as a tire recapper. He last worked on a regular and sustained basis in December of 2003. On January 16, 2004, Mr. Fink filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that he became disabled for all forms of substantial gainful employment on December 15, 2003 because of disc and nerve problems in his back, complicated

by arthritis. Mr. Fink now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Mr. Fink's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. By opinion dated January 25, 2006, the Law Judge also determined that plaintiff was not disabled and that he was not entitled to benefits under either federal program. Upon adoption of the Law Judge's opinion as the final decision of the Commissioner by the Social Security Administration's Appeals Council, Mr. Fink appealed to this court. On September 29, 2006, the court remanded the case to the Commissioner on the Commissioner's motion. On November 14, 2006, the Appeals Council remanded the case to the Administrative Law Judge for additional proceedings and a new decision.

During the period in which his first set of claims were being adjudicated, Mr. Fink filed new applications for disability insurance benefits and supplemental security income benefits. The new applications were denied upon initial consideration and reconsideration. Mr. Fink requested a hearing on these claims before an Administrative Law Judge. The Commissioner consolidated the first and second sets of claims. On January 26, 2007, an Administrative Law Judge held a hearing on the consolidated claims. By opinion issued on February 20, 2007, the Law Judge denied plaintiff's entitlement to benefits under both federal programs. After resolution of certain issues generated by the pendency of the dual sets of applications, the Appeals Council adopted the

2

Law Judge's opinion as the final decision of the Commissioner. Having now exhausted all available administrative remedies, Mr. Fink has appealed to this court.[1]

In the final decision of the Commissioner now subject to review, the Administrative Law Judge found that Mr. Fink suffers from severe impairments on the basis of degenerative disc disease of the lumbosacral spine, status post decompression and fusion surgery (April, 2004); a musculoskeletal disorder of the right shoulder; and a history of hypertensive vascular disease and hyperthyroidism. (TR 249). The medical record also establishes that plaintiff has a history of bilateral carpel tunnel release surgeries. As a result of this combination of impairments, the Law Judge found that Mr. Fink is disabled for his past relevant work roles. However, the Law Judge found that Mr. Fink retains sufficient functional capacity for some exertional activities. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at the light exertional level that may require lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for about 6 hours in an 8-hour workday; sitting for about 6 hours in an 8-hour workday; pushing/pulling with no limitation other than shown above for lifting/carrying; limited to occasionally climbing, balancing, stooping, kneeling, crouching and crawling; and restricted in the right arm to lifting nothing above chest level.

(TR 251). The Law Judge found that plaintiff's complaints of disabling subjective manifestations were "not entirely credible." (TR 252). In discounting plaintiff's testimony, the Law Judge apparently relied on Mr. Fink's testimony regarding his current activities as well as reports from nonexamining state agency physicians. Given his finding as to the extent of plaintiff's residual functional capacity, and after considering Mr. Fink's age, education, and prior work experience,

---

[1] Inasmuch as the earlier civil action filed by Mr. Fink presents exactly the same issues as those submitted under the current civil action, the earlier civil action has now been dismissed on joint motion of the parties.

3

as well as testimony from a vocational expert, the Law Judge determined that plaintiff retains sufficient functional capacity to perform several specific light and sedentary work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mr. Fink is not disabled, and that he is not entitled to benefits under either federal program. See, gen., 20 C.F.R. § 404.1520(g).

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. This is a pain case. The court believes that the medical evidence clearly establishes that Mr. Fink suffers from musculoskeletal impairments of a severity sufficient to cause the subjective problems alleged by Mr. Fink in applying for benefits, and as described by plaintiff at the time of the administrative hearing. The Administrative Law Judge specifically found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (TR 252). Under the Fourth Circuit precedent, the Law Judge's decision to discount plaintiff's testimony as incredible is not supported by substantial evidence. At the time of the administrative hearing, the vocational expert

4

testified that the subjective manifestations described by Mr. Fink are such as to render him totally disabled for all forms of substantial gainful activity. (TR 609). Thus, the court concludes that Mr. Fink has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

The case of Craig v. Chater, 76 F.3d 585 (4th Cir. 1996) is commonly cited as setting forth the appropriate standard for review of social security pain cases. In Craig, the court commented as follows:

> Interpreting section 423(d)(5)(A), this court held that in order for pain to be found disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, "there need not be objective evidence of the pain itself." Id. (quoting Green v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir. 1984)); accord Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990) (explaining that § 423(d)(5)(A) requires "a claimant to show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective evidence of the pain itself"); Hyatt III, 899 F.2d at 332 (stating that § 423(d)(5)(A) "requires objective medical evidence of an underlying condition that could reasonably produce the pain alleged"); Hatcher v. Secretary, Dept. of Health & Human Serv., 898 F.2d 21, 24 (4th Cir. 1989) ("[Section 423(d)(5)(A)] . . . requires medical evidence of an impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"); Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) ("[W]hile there must be medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity."); Gross, 785 F.2d at 1166 (upholding denial of benefits where evidence failed to show any abnormality which would explain claimant's pains). Under these cases, once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness, and effusion. See Jenkins, 906 F.2d at 109.

76 F.3d at 592-93(footnote omitted).

The Fourth Circuit applied its standard for the adjudication of pain cases in the more recent case of Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), which featured subjective manifestations somewhat similar to those present in the instant case:

> The record in this case demonstrates that Mr. Hines complied with the two step process mandated by Fourth Circuit precedent and the resulting regulations. See Mickles, 29 F.3d at 925 (Luttig, J., concurring). There is no dispute that Mr. Hines suffers from SCD. The blood work that Dr. Jeon used to diagnose his patient's condition provides the required objective evidence of a medical condition which would cause pain. There is also no dispute that SCD causes the type of chronic pain from which Mr. Hines suffers. In fact, medical science recognizes that SCD can cause bouts of severe acute pain as it progresses.
>
> Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, Mr. Hines was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day. Mr. Hines did so by testifying that his illness and the resulting fatigue require him to lie down "half a day."

453 F.3d at 565 (footnotes omitted).

As previously noted, the plaintiff in the instant case suffers primarily from musculoskeletal limitations resulting from degenerative arthritis following a lower back surgery, disorder of the right shoulder, and residuals of bilateral carpel tunnel release procedures. Mr. Fink testified at the more recent administrative hearing conducted in his case on January 26, 2007. Mr. Fink related that he experienced "real bad pain" following his surgery on April 5, 2004. (TR 588). He noted that the pain is actually worse than before his surgery. (TR 589). He estimated that his pain qualifies as a ten on a scale of zero to ten. (TR 589-90). Because of a lack of insurance, he is unable to receive regular orthopedic service. (TR 590). He still has pain in his wrists following the carpel tunnel release procedures. Plaintiff stated that he can stand for about five to ten minutes without resting, and that he can walk for about a block before his back and legs give out. (TR

6

592). Some days, he is able to put on his shoes and socks, but on other days, his wife must help. (TR 594). He is compelled to spend much of the day lying on his side on the couch. (TR 594). He is unable to sit long enough to attend church. (TR 595).

In an attempt to assess the severity of plaintiff's musculoskeletal problems, the state disability agency referred Mr. Fink for a consultative evaluation. Dr. Philip Smith submitted the consultative report following examination on July 29, 2006. Dr. Smith summarized Mr. Fink's medical history as follows:

> Regarding back pain, he reports onset of low back pain in 2003 and reports status post fusion which may have included discectomy in 2004. He reports he still has pain down his legs although denies bowel or bladder dysfunction. He says he went to the ER two months ago as well as one other time due to this pain. He also reports his back hurts all the time and that is worse with exertion although it also hurts when he lies flat. He reports that his back pain significantly limits him and that it caused him to leave his prior job and causes him to have difficulty with dressing himself, walking or carrying weight.
>
> He had an onset of right shoulder pain in approximately 2004. He has pain in right shoulder up into the neck but using his shoulder significantly exacerbates this. He reports having difficulty reaching over his head or bearing more than approximately 10 pounds of weight with his arm although his weightbearing capacity reports him probably more so limited by his back pain.

(TR 546).

The consultant offered the following summary of plaintiff's subjective complaints:

> The patient's last job was at the Water Treatment Plant and reports he had to leave that job in 2003 due to pain primarily limited by his back. He reports he can stand approximately several minutes at a time and can walk approximately one block on a level ground limited by back pain. He reports he can sit still for only several minutes. He does find it difficult to put on his pants, shoes and socks due to back pain but is able to do so. He denies difficulty in feeding himself. He reports maximum lifting of 10 pounds limited mostly by his back. He reports he can drive his car. He can drive for a couple of miles limited again by back pain. He reports that he does not participate in household chores and has [sic] limited from doing

7

so by pain in his back. He avoids stairs when possible but says he can climb four
steps.

(TR 547). Dr. Smith went on to summarize his objective range of motion findings:

> RANGE OF MOTION: Range of motion was examined for the elbow, forearm,
> wrist, shoulder, cervical spine, lumbar spine, hip, knee, and ankle with the
> following abnormalities. The right shoulder is limited to 110 degrees forward
> flexion with normal. 40-degree backward elevation, 130 degrees abduction, normal
> internal and external rotation. Left shoulder has full range of motion. Lumbar
> spine flexion is limited to 60 degrees with normal lateral flexion, 15 degrees of
> backward extension. Straight leg raising: He is limited to 65 degrees bilaterally on
> supine straight leg raising. He reports pain in his back that goes on his leg and
> improves when the knee is flexed in this position. He has 75 degree straight leg
> raising in a sitting position bilaterally. He is able to lie straight back on the table
> although does so slowly. He is able to walk on his heels, toes, and tandem gait
> without difficulty. He is able to squat only about 50% on the way down to the floor
> and braces himself on his knees with his bilateral arms when doing so.

(TR 548-49). Dr. Smith submitted the following overall impression:

> With regard to low back pain, Mr. Fink has a history of low back fusion. <u>His exam
> is consistent with continued pain likely from etiology in his low back. I would
> expect that this would limit his ability to stand, walk and bear loads as he has
> described</u>.
>
> Right shoulder. He does have some range of motion on this side although there is
> no point tenderness and no muscle spasm noted. He does have full use of the lower
> distal arm but would expect only minimal limitation from this complaint. With
> regard to bilateral carpal tunnel syndrome, at this time, I do not find evidence that
> he should be limited from this complaint.

(TR 549)(emphasis added).

The Administrative Law Judge arranged for Dr. Hayden Alexander, a medical expert, to

testify at the administrative hearing. After considering the objective medical evidence, Dr.

8

Alexander opined that Mr. Fink's physical conditions do not meet or equal any of the listings under Appendix I to Subpart P.[2] Dr. Alexander went on to comment as follows:

> The initial surgery was based on a discogram and some change. So 1.04 was satisfied in the beginning. <u>So the quandary I'm in is I feel that there are, there is support from the history in a global sense, based on my experience and so forth, of support of the symptom complaints</u>. But there is not a, more than a suggestion from the objective evidence under 1.04A. And so I can not say from subjective evidence that there is a listing level severity to meet or equal 1.04A. And the lack of post op imaging doesn't help me at all for 1.04. I do not feel there's a meet or equal for 1.02B, which would be covered in the carpel tunnel, or peripheral neuropathy, 11.14. There's a peripheral neuropathy because examiners and the consultative and others found no problem with fine or gross movement or grip bilaterally in the hands. So I do feel that there is an impairment of function regarding the right shoulder based on the consultative.

(TR 599)(emphasis added).

Dr. Barry Hensley testified at the administrative hearing as a vocational expert. Assuming a residual functional capacity for light and sedentary exertion, Dr. Hensley identified several jobs in which Mr. Fink could be expected to perform. (TR 605-06). However, when asked to consider plaintiff's subjective complaints regarding his need to lie down and rest during the course of a regular day, Dr. Hensley opined that Mr. Fink would be unable to perform any job on a regular and sustained basis. (TR 609).

As previously noted, the Administrative Law Judge specifically found that Mr. Fink's medically determinable impairments could reasonably be expected to produce his alleged symptoms. This finding is consistent with the medical opinions of the consultant, Dr. Smith, and the medical advisor, Dr. Alexander. The court believes that under the Fourth Circuit's rule for the

---

[2] If a claimant suffers from a listed impairment, the claimant is considered to be disabled for all forms of work without consideration of factors such as age, education, and prior work experience. See 20 C.F.R. §§ 404.1520(d) and 416.920(d).

9

adjudication of pain cases, once it is determined that a claimant's objective medical problems could reasonably be expected to produce his alleged subjective symptoms, it need only be determined whether those subjective symptoms are so severe as to prevent performance of all forms of substantial gainful activity. Based on the report of the medical consultant, the testimony of the medical advisor, and the testimony of the vocational expert, the court must conclude that Mr. Fink has met the burden of proof in establishing that his severe musculoskeletal problems, and associated subjective symptoms, are so severe as to prevent all forms of work activity. It follows that Mr. Fink has met the burden of proof in establishing entitlement to a period of disability.

Mr. Fink's earning records reflect regular work activity prior to the termination of his employment in December of 2003. Given this fact, and based on the temporal proximity of plaintiff's termination of employment and his lower back surgery, the court concludes that Mr. Fink has met the burden of proof in establishing that he became disabled for all forms of substantial gainful employment on December 15, 2003, as alleged in his applications for benefits.

For the reasons as stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must therefore be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act for entitlement to disability insurance benefits, judgment will be entered in favor of plaintiff. The final decision of the Commissioner will be reversed and the case remanded for the establishment of proper benefits. The Commissioner's final decision denying entitlement to supplemental security income benefits will also be reversed to the extent that the denial was based on the finding that plaintiff is not disabled. However, since the Commissioner has apparently not considered whether plaintiff meets the financial eligibility requirements under

that benefit program, the court must remand the case for an appropriate determination. An order and judgment in conformity will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 28th day of October, 2008.

_____
United States District Judge